UNITED STATES DISTRICT COURT     SOUTHERN DISTRICT OF TEXAS

| | | |
|---|---|---|
| Securities and Exchange Commission, | § § § § § § § § § | |
| Plaintiff, | | |
| *versus* | | Civil Action 13-163 |
| Jonathan Gilchrist, | | |
| Defendant. | | |

## Opinion on Summary Judgment

1.  *Introduction.*

   The Commission says the company violated federal securities law by not registering its sales. It also says that the company manipulated the market for its securities and defrauded the public. The Commission will prevail.


2.  *Background.*

   Gilchrist was the president of Mortgage Xpress, Inc. In a meeting in November of 2007, Xpress split his stock fifty-to-one in reverse, nominally changing its price from $.02 to $1. At this meeting, it changed its name to Alternative Energy Technology Center, Inc. Alternative became a public company by merging with Meridian Biorefining, Inc., with the idea of entering the business that the company's name implies. Alternative then sold six million of its shares to the Hepplewhite Corporation, Cobalt Services, Inc., and Gilchrist. Once the certificates were issued, Gilchrist controlled ninety-eight percent of Alternative's unrestricted shares.

   Hepplewhite is a private investment company with Gilchrist as the chairman and sole director. Its majority shareholder was the Business Factory, another Houston investment company where Gilchrist is president and chairman. Cobalt is a Houston investment company with one shareholder: the Business Factory.

   The Commission says Gilchrist violated federal securities law when he did not register the sales. Gilchrist says the sales to Hepplewhite, Cobalt, and himself were under Rule 504 of Regulation D of the Securities Act of 1933, allowing an exemption for them. The Commission says that Gilchrist's sales did not qualify for the exemption because, at the time of the offer,

Alternative had limited assets and business operations. It also says that even if the sales qualified for the exemption, Hepplewhite and Cobalt did not file a required notice of the sale.

Alternative's transfer agent questioned the sales because Gilchrist wanted certificates without restrictions. This, the Commission says, violated Regulation D. The certificates to Gilchrist were issued with restrictions, but not on those to Hepplewhite or Cobalt.

Gilchrist traded Alternative shares to and from himself, through Hepplewhite and Cobalt to incrementally raise the price of the shares by the appearance of active investor interest. The Commission says these trades were one-third of the volume for Alternative shares in that period. On some days, his trades were the only ones in Alternative's shares. In his final match trade, its securities were $2.41 a share.

In March, Gilchrist paid for two campaigns to promote Alternative to the public. The Commission concedes that the representations by the campaigns were not false. Alternative's stock rose from $2.41 to $3.75 a share; then the Commission halted its trades. Gilchrist transferred Hepplewhite's shares to four other accounts and sold 229,661 shares to the public for $692,146.38. These sales were the profit-reaping step of what the Commission calls pump-and-dump.

Gilchrist says the Commission's five-year time limit to bring these claims has lapsed because Alternative's shares were sold in December 2007 and the claims were not filed until January 2013. The Commission says the certificates were issued on February 5, 2008, and his match trades and sales are all within the time limit because it does not begin to run until the fraud is complete.

The Commission says Gilchrist did not abide by Regulation D because he did not register any of the sales. Gilchrist says the sales of the stock fall within the exception because Alternative had a specific business plan to develop biofuels, evinced by it's acquisition of Meridian and changing Xpress's name.

He says the twenty-five match trades do not amount to market manipulation as a matter of law because they represented less than one percent of the volume over that period. He says the Commission's theory that those trades increased the share price from $1 to $3.75 is unreasonable.

3.    *Time Limit.*

Under federal law, an action for securities fraud must be brought five years from the date when the claim accrued.[1] A security is issued when certificates are delivered. Fraudulent trade practices are considered as a whole and are not separated into individual claims.

Gilchrist's theory that the contract for six million shares of Alternative stock occurred on December 27 and are thus outside of the time limit lacks merit. Hepplewhite's and Cobalt's certificates were issued on February 5, not when they contracted. A promise to issue a security is not issuing one – just as an agreement to execute a deed for money is not complete until the deed is delivered. Similarly, Gilchrist's claim that the two match trades on January 18 should fall outside of the time limit fails. The disputed trades are the context of his trading. The consideration of them does not increase his liability for his fraudulent conduct.

4.    *Failure to Register.*

Federal law requires a company to register its trades, but it may be exempt under certain circumstances. An issuer must register its trades if it is a company in development with no specific business purpose.[2] If the trades qualify for an exemption, an issuer must file a notice of sale with the Commission.[3]

At the time of sale, Alternative was a developing company with limited assets and no business purpose. Accordingly, the sale of Alternative securities to Hepplewhite, Cobalt and Gilchrist did not qualify for an exemption and should have been registered with the Commission. Although Alternative merged with Meridian, Gilchrist has not shown a particular business purpose for the company. Simply stating a purpose is not evidence of anything. Additionally, if Gilchrist qualified for an exemption, he did not notify the Commission.

---

[1] 28 U.S.C.A. § 2462

[2] 17 C.F.R. § 230.504 (a)(3) (2009).

[3] 17 C.F.R. § 230.503 (a)(1) (2008).

5.     *Market Manipulation.*

Under federal law, a person may not fraudulently trade securities.[4] Market manipulation using match trades – intended to mislead investors by artificially effecting market activity for securities – deceives the public materially.[5]

Gilchrist manipulated the market when he traded securities between Hepplewhite, Cobalt, and Alternative to create the illusion of interest in Alternative stock. That activity misled honest purchasers of Alternative securities. Gilchrist does not contest making these trades intentionally, he merely suggests that the match trades did not create enough volume to materially effect the market. There were days when the only activity on Alternative's securities were his trades. Gilchrist profited $692,146.38 when he sold inflated securities, defrauding the public.

The Commission discusses Gilchrist paying to campaign Alternative stock as a facet of his fraud, yet concedes that the representations by the campaigns were not false. Manipulation is shown by his match trades, not by the campaigns. The Commission may not infer anything from an honest promotional campaign; it is not illegal to sell stock once the price goes up.


6.     *Conclusion.*

Gilchrist's time limit argument fails because the six million Alternative shares were not issued until February 5. Consideration of the two match trades he disputes does not increase his liability. The sale of Alternative securities did not qualify for an exemption under Regulation D because the sales were from a company with limited assets and no business purpose. Gilchrist manipulated the market for Alternative securities by using match trades. He defrauded the public by selling inflated securities. The Commission will prevail.


Signed on August 15, 2013, at Houston, Texas.


                              _____
                                   Lynn N. Hughes
                              United States District Judge


---

[4] 17 C.F.R. § 240.10b-5

[5] *Santa Fe Industries, Inc. v. Green*, 430 U.S. 462, 476 (1977).